## WAMSUTTA MILLS *v.* FOX.

*(Circuit Court, D. Connecticut.  February 4, 1892.)*

INJUNCTION—QUALITY OF GOODS SOLD—MISREPRESENTATIONS.

An employe of defendant retail dry-goods merchant, in charge of the men's furnishing goods department, advertised sales, at reduced prices, of men's shirts made from Wamsutta cotton, a high-grade cotton of established reputation made by plaintiff, and the clerk in charge of such sales, in positive terms, represented the shirts sold at the advertised prices as made of Wamsutta cotton, when, in fact, they were made of a much inferior cotton. *Held,* that a temporary injunction should be granted restraining defendant from advertising and selling such shirts as made from Wamsutta cotton, notwithstanding defendant denied knowledge of the untrue representation, and the sales were discontinued on service of the motion papers and notice of the misrepresentation.

In Equity.  Bill in equity by the Wamsutta Mills against Moses Fox, to restrain defendant from advertising and selling articles as made from muslin manufactured by defendant, which were, in fact, made from inferior muslin.  Motion for temporary injunction.  Granted.

*Edward D. Robbins,* for plaintiff.

*Charles E. Gross,* for defendant.

SHIPMAN, District Judge.  This is a bill in equity to restrain the defendant from advertising and selling shirts, made from inferior cotton shirtings, as made from Wamsutta cotton, upon the ground that the cotton shirting manufactured by the plaintiff, and known as, and generally called, "Wamsutta cotton," has acquired a well-known, widely extended, and high reputation, and extensive sales throughout the country; and that the sale of an inferior article under that name, and the untrue assertion by advertisements, and otherwise, that the inferior cotton shirting is Wamsutta cotton, injure the plaintiff's reputation, the good-will, and the profits of its business.  The present hearing is upon a motion for temporary injunction.

The allegations of the bill in regard to the high and general reputation of the cotton shirting manufactured by the plaintiff, and generally called "Wamsutta," are not denied.  It appears from the affidavits that the defendant is a large retail dry-goods merchant in Hartford, whose business is divided into departments, and that one of his employes is the head of the men's furnishing goods department.  In accordance with a not unusual custom among merchants of this class, the prices of the odd lots on hand were reduced after the 1st of January, and were advertised, by an extensive advertisement, to be sold at these low prices during the week beginning January 4, 1892.  Among men's furnishing goods, there were advertised, "Men's Laundered Shirts, Wamsutta cotton, 67c., value $1.00.  Men's Night-Shirts, Wamsutta cotton, 47c., value 75c."  This part of the advertisement was prepared by the head of said department, without the knowledge of Fox, who did not read it.  Affidavits are produced from three persons, who bought at the defendant's store, in response to this advertisement, four night-shirts and one laundered shirt, all which were expressly represented by the salesman

in attendance to be Wamsutta cotton. The clerk said he would warrant the laundered shirt to be Wamsutta cotton, and, at the request of the buyer, inserted "Wam." in the bill of the goods. These shirts were all made of greatly inferior goods, which were not the manufacture of the plaintiff. The defendant's affidavit states that he knew nothing of the untrue representations, that they were made without his orders, that his attention was first called to their existence by the motion papers in this case, when he forthwith ordered the sales to be stopped, and that his general orders to his clerks have been to exercise all possible care, and not to misrepresent the origin of any article. The head of the department says, in his affidavit, that there were laundered shirts on hand, stamped "Wamsutta muslin," which were made of Wamsutta cotton, and were marked down to 67 cents, and that the advertisement referred to these shirts, and to no others; and that, in the advertisement in regard to the night-shirts, he made a mistake, innocently, and without intention to misrepresent; that the sales of these shirts were stopped on January 16th, when the papers were served. Between the 2d and 16th of January, 25 laundered shirts were sold, some of them made of Wamsutta cotton, and 31 night-shirts were sold. The receipts from the two classes of sales were $31.32. On January 2d the plaintiff had on hand 145 laundered shirts, and 132 night-shirts, which were respectively marked down to 67 and 47 cents. The argument of the defendant against a temporary injunction is that the sales were for a temporary purpose, that the goods on hand were a small quantity, that the representations were innocently made, and that the sales were promptly stopped when the defendant was informed of the misrepresentations. The night-shirts are so inferior that it is impossible to suppose that a person of the experience of a head of a department in dry-goods was mistaken, if he examined them. If he prepared the advertisement without knowing whether he was telling the truth or not he was exceedingly careless. The defendant had on hand some Wamsutta laundered shirts, and some of an inferior quality. They all seem to have been marked at 67 cents. The clerk who was in charge, in positive terms, misrepresented the character of the laundered shirt which he sold. I am satisfied that in the advertisement, and in the sales under it, there was an indifference to truth on the part of the subordinates in the defendant's store. The point of most importance which has been urged by the defendant is that the sales were small in amount, have been stopped, and that an injunction is to prevent a threatened wrong, rather than to punish for a past injury. "It seeks to prevent a meditated wrong, more often than to redress an injury already done." 2 Story, Eq. Jur. § 862. When a past injury has ceased, and cannot be renewed or continued, a temporary injunction will not be issued. *Potter* v. *Crowell*, 1 Abb. (U. S.) 89. In this case it can be renewed. It will not be consciously renewed by the defendant, but, although he has heretofore "given orders to his clerks and employes to exercise all possible care in this matter, and not to represent any article sold as made of any material of which they are not positive," the orders have not been obeyed by the persons

in charge of the men's furnishing department, and may be still disobeyed. The conduct of these persons cannot be successfully defended. The amount of sales was small, but it is apparent that the litigation is to be continued, and, for the reason which I have given, I think that an injunction *pendente lite* should be issued. The motion is granted.

### ON MOTION FOR REHEARING.

#### (February 19, 1892.)

SHIPMAN, District Judge. This is a motion for a rehearing of the application for a temporary injunction in the above-entitled cause, upon the ground that the meaning of that portion of the defendant's affidavit upon which the court based its reason for granting an injunction was misunderstood. The defendant now makes an affidavit that the orders which he issued to his clerks, not to misrepresent any article sold as made of any material of which they were not positive, were given after the motion papers in this case were served, and that no such orders had ever been previously given, and that the need of such orders to his clerks against the misrepresentation of the character of goods offered for sale had never occurred to him, as he had assumed that such an order was necessarily implied, on account of what he knew to be his reputation among the people of Hartford for fair and honest dealing, to which he attributes his success as a merchant.

The meaning of the original affidavit was misunderstood; for I supposed that it referred to directions which the defendant had previously been in the habit of giving, or which he had previously given. It appears that no express directions were given, and the need of such orders had never occurred to him, upon the assumption that they were implied. It will be observed that the distinction between the facts as now explained and as formerly understood consists in the distinction between an express order and the defendant's assumption that there was an implied order; but it is not necessary to dwell upon that point, because I think that, although the particular reason upon which the order for an injunction was based did not exist, the facts which, as appears from all the affidavits, did exist constitute a sufficient reason for a temporary injunction. The motion is denied.